**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 09 CR 432** |
| | ) | **Judge Blanche M. Manning** |
| **ALFRED ALLEN** | ) | |

**DEFENDANT'S PETITION AS TO SENTENCING FACTORS**

NOW COMES the Defendant, ALFRED ALLEN, by his attorney, JERRY BISCHOFF, and Pursuant to the Federal Rules of Criminal Procedure, Rule 32.1(g) submits the following Position Paper:

1. **FACTUAL CORRECTIONS**:

Alfred Allen has read the Presentence Investigation Report with the assistance of counsel and he indicated that there are no corrections.

2. **SENTENCING:**

After *Booker,* the United States Sentencing Guidelines are just "advice" and judges' "freedom to impose a reasonable sentence outside the range is unfettered." *See U.S. v. Demaree*, 459 F.3d 791 (7th Cir. 2006). The Supreme Court has ruled that "...the sentencing court does not enjoy the benefit of a legal presumption that the Guideline sentence should apply." *See Rita v. U.S,* 127 S.Ct. 2456 (2007). In fact, District Courts are no longer required, or permitted, to simply defer to the Sentencing Commission's policies. *See Rita v. U.S,* 127 S. Ct. 2456, 2468 (2007).

The primary directive of 18 U.S.C. § 3553(a) is to impose a sentence that is "sufficient, but not greater than necessary to achieve the purposes of sentencing. Merely reciting the factors is not enough. Instead, the court must provide some analysis of how the factors apply to the facts. *See U.S. v. Cunningham,* 429 F.3d 673, 675-679 (7th Cir. 2005). The district court may conclude that the Guideline sentence fails to reflect §3553(a) considerations, reflects an unsound judgement, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate "regardless." *Rita,* at 127 S.Ct 2456, 2463 (2007).

When imposing a sentence, a district court must first calculate the advisory Guideline range and then select a sentence within or outside the range in light of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Robinson*, 435 F.3d 699, 700-01 (7th Cir.2006). The factors under Section 3553(a) include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law, the need to provide just punishment for the offense, the need to afford adequate deterrence to criminal conduct and the need to protect the public from further crimes of the defendant. 18 U.S.C. §§ 3553(a)(1) & (2)(A-C).

In the case at bar, the government and the defendant agree on the appropriate Guideline calculations. In addition, based on the defendant's cooperation, barring some unseen event, the government will move the Court pursuant to Guideline §5K1.1 to depart from the applicable Guideline range and impose the sentence agreed to by the parties.

**A. Sentencing Pursuant to Guidelines:**

1. When imposing a sentence, a district court must first calculate the advisory Guideline range and then select a sentence within or outside the range in light of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Robinson*, 435 F.3d 699, 700-01 (7th Cir.2006). Under the Guidelines, the calculations are as follows:

A. Base Offense Level

(1) Alfred's base offense level is 26 pursuant to Guideline §2D1.1(a)(5) of the November 2007 edition of the Guidelines Manual.

(2) Alfred has demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline §3E1.1(a). Therefore, Alfred is entitled to a two level reduction in the offense level.

a. In addition, Alfred has timely notified the government of his intention to enter a plea of guilty. Therefore, assuming the Court determines that his offense level is 16 or greater prior to consideration of whether Alfred is entitled to acceptance of responsibility, Alfred should receive an additional one point reduction in his offense level;

(3) Defendant's criminal history points total 15 and his criminal history category is

VI;

(4) Pursuant to Sentencing Guideline §4B1.1(b)(c) defendant is a career offender. Therefore, his base level is 32. After application of the 3 point reduction described in paragraph 2 and 2A above, Mr. Alfred's total offense level is 29. This results in an advisory Sentencing Guideline range of 151 to 188 months.

(5) The parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 50 percent of the low end of the applicable guidelines range. Therefore, the parties agree that under the Guidelines, Mr. Allen should be sentenced to a term of 75.5 months.

**B. Application of Statutory Sentencing Factors:**

In the unlikely event that the Court were to refuse to impose the agreed upon term of incarceration set forth in the plea agreement, thereby rejecting the plea agreement, the defendant would ask the Court to consider the following sentencing factors.

**1. The §3553(a) Factors Favor a Non-Guideline Sentence.**

Since *Booker*, the guideline range is but one factor of many to be considered under 18 §U.S.C. 3553(a). *See Booker,* 543 U.S. at 249 (relying on §3553(a)(1)'s text stating that court will consider "the nature and circumstances of the offense and the history and characteristics of the defendant.") *see also United States v. Ranum,* 353 F. Supp. 2d 984, 985 (E.D. Wis. 2005) (Adelman, J.).

**a. Physical Impairment**

Alfred suffers from a long list of physical disorders. *See Exhibit "C."* Counsel believes there is a genuine issue as to whether the Bureau of Prisons can adequately treat his many medical needs.

Alfred has been diagnosed with borderline diabetes; hypertension; high blood pressure; sleep apnea for which he requires a C Pap - failure to provide a C Pap could result in death; GERD or gastroesophageal reflux disease for which he takes Zantac; asthma for which he requires Albuterol and Advair; chronic bronchitis; severe back problems relating to several herniated disks and spinal surgery (lumbar discectomy) during which three disks at L1 - L3 were removed and for which he takes Vicodin as needed; vitamin D deficiency; high cholesterol for

which he takes Lipitor; and he underwent surgery in January to repair a bilateral inguinal hernia. Recently, the area of the hernia has become inflamed and has required further treatment. In addition, Alfred suffers from chronic back pain, abdominal pain and nausea. Alfred consistently describes his pain level at a 7 out of a possible 10 on the pain scale.

In July, 2010 Alfred underwent a right laparoscopic partial nephrectomy to remove a portion of his kidney and from which he is currently rehabilitating. Doctors are still treating Alfred for cancer of his kidney and they are monitoring a lesion on his liver for possible cancer. A recent C-Scan indicates that the size of the growth has increased by half a centimeter. An MRI has been ordered to monitor the growth and status of the respective masses. *See Exhibits "A" "B"& "C."*

Physical impairment is a grounds for a downward variance. In ***U.S. v. Alemenas***, 553 F.3d 27 (1st Cir. 2009) after granting departure from the career offender guideline for the defendant who was charged with crack distribution, the district court also varied 43 months below the reduced range citing defendant's chronic neck pain and his mental and emotional condition; In ***U.S. v. Kemph***,2009 WL 667413 (4th Cir. March 13, 2009) (unpub) the district court granted departure for extraordinary physical impairment based on USSG §5H1.4, in light of defendant's asbestosis, glaucoma, chronic pulmonary lung disease, hypertension and psychiatric conditions, and further varied 52 months below the guideline range to impose a 240 months for eight charges involving possession, distribution and manufacture of methamphetamine, plus a charge of being a felon-in-possession; In ***U.S. v. McFarlin***, 535 F.3d 808 (8th Cir. 2008) the court imposed three years probation for conspiracy to distribute cocaine rather than 60 month guideline term, based on 54-year-old's serious health problems, including anxiety, depression, nervous disorders and heart disease, significantly reduced life expectancy, as well as his extraordinary post-arrest rehabilitation; In ***U.S. v. Spigner,*** 416 F.3d 708 (8th Cir. 2005) although the defendant who sold more than 50 grams of crack had agreed not to ask for downward departures based on health, the case was remanded because the district court could still impose a sentence lower than the suggested range and §3553(a)(2)(D) required court to consider the need to provide medical care in the most effective manner. Defendant suffered from high blood pressure so severe it resulted in kidney failure, required regular dialysis treatment and surgery; In ***U.S. v. Gee***, 226

F.3d 885 (7th Cir. 2000) the Court's grant of a downward departure under §5H1.4 based on health was upheld where judge found "imprisonment posed a substantial risk to the defendant's life," and that BOP letter stating that it could take care of any medical problem merely trumpeted BOP capabilities. In ***U.S. v. Jiminez***, 212 F. Supp. 2d 214 (S.D.N.Y. 2002) the court gave downward departure from the guideline range of 57-71 months where defendant suffered brain aneurism causing severe memory loss and psychotic symptoms after her illegal reentry occurred; the court rejected government's claim that departure is warranted only when BOP cannot adequately treat a physical ailment.

Physical condition, like mental health, is a factor in mitigation. Not only is prison an inappropriate means for promoting treatment (*See* 18 U.S.C. §3582(a)), but the Bureau of Prisons cannot always assure adequate treatment. *See United States v. Martin*, 363 F.3d 25 (1st Cir. 2004) affirming downward departure where the Bureau of Prisons could not assure adequate treatment for the Crohn's disease).

In Alfred's case, every precaution should be taken to ensure that the Bureau of Prisons can adequately treat him before he is incarcerated.

**b. Diminished Capacity**

Pursuant to U.S.S.G. §5K2.13. Diminished Capacity, a sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. The term *significantly reduced mental capacity* means a "...significantly impaired ability to either understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or control behavior that defendant knows is wrongful."

Alfred is a heroin addict with an extensive history of mental health disorders and it is vital that he is assigned to a penitentiary that is equipped to provide treatment for him. He is currently addicted to pain killers. Unfortunately, there is a strong probability that Alfred will not receive adequate treatment for his multiple problems in the Bureau of Prisons and he will probably see his mental health grow worse. In September of 2006, the United States Department of Justice Statistics, published the report "Mental Health Problems of Prison and Jail Inmates." This is the only report on this topic which includes information about mental health treatment in

the US Bureau of Prisons. The report is available at *www.ojp.usdoj.gov/bjs/pub/pdf/mhppji.pdf.* The report found that a prisoner will not get mental health counseling unless he or she is extremely disturbed. In fact, only 15.1% of prisoners in the federal system who had a mental health problem received any professional mental health therapy at all.

As has been stated above, Alfred's childhood was filled with constant physical, emotional and sexual abuse. His mother, grandmother and aunt all had histories of mental disorders. He started seeing a psychiatrist when he was just 13 years old at Mount Sinai Hospital for three years. Alfred has been diagnosed with bipolar disorder, depression, panic disorder and possible post traumatic stress disorder. Alfred suffers from mood swings which include moments of anger although he has no history of being physically abusive. Alfred experiences anxiety attacks during which he is overwhelmed by severe panic attacks which create symptoms that mimic a heart attack. He was hospitalized in the emergency room at Northwestern Memorial hospital as recently as August 2, 2010 for an episode related to an anxiety attack. Suicide or suicidal ideation is associated with many individuals who suffer from bipolar disorder as well as issues pertaining to substance abuse. Although Alfred denied suicidal thoughts during his probation interview during the pendency of this case he has made statements to this writer that might suggest otherwise. He also has made statements to his mental health care providers that he has had thoughts about overdosing and he has indicated past attempts while he was in high school "...so that his mother wouldn't be abusive." He has an obsessive fear that he will die in prison. Alfred has taken a variety of medications for his problems including Lithium, Celebrex, Paxil, Xanax, Avapro, Prozac, Combivent, Wellbutrin, Cymbalta among others.

Alfred was hospitalized in the emergency room at St. Elizabeth Hospital on August 20, 2010 for panic attacks and as recently as August 28, 2010. He is currently being treated by mental health care professionals for a myriad of problems.

Impaired mental functioning is inherently mitigating. *See* ***Tennard v. Dretke****,* 542 U.S. 274, 285-88 (2004); ***Santosky v. Kramer***, 455 U.S. 745, 789 (1982) (Rehnquist, J., joined by Burger, C.J., White, and O'Connor, J., dissenting) "It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens."; In ***U.S. v. Alemenas****, 553 F.3d 27 (1st Dist. 2009)* a case

involving the selling of crack cocaine, the judge entered a 43 month downward variance from an already reduced guideline range citing the defendant's mental and emotional condition plus his chronic neck pain.

In Alfred's case, every precaution should be taken to ensure that the Bureau of Prisons can adequately treat him before he is incarcerated.

**c. Lack of Guidance as a Youth**

Alfred suffered from extreme physical, sexual and emotional abuse as a youth. As has been detailed in the PSR and Alfred's Version of the Offense, he was raised by an unfit mother. At birth, Alfred was placed in the custody of the Department of Children and Family Services and raised in foster care. Unfortunately, his mother, a drug addict, was able to obtain custody when he was four years old. Thereafter, she beat him regularly and once even dangled him from a third story window by his ankles because he had not learned his ABC's. He still has the scars of those beatings to this day. When he turned to the Better Boy's Foundation for help at age 14, an after school program, a counselor tried to abuse him sexually. The case was resolved in the court system and the counselor was ultimately jailed. Alfred's father was an alcoholic who was never present in his life. His mother was a drug addict. His grandfather who helped raise him was also an alcoholic.

In ***U.S. v. McBride***, the court found that a non-guideline sentence of 84 months was sufficient but not greater than necessary district court based on §3553(a) factors, including the murder of defendant's father, severe physical abuse defendant suffered at the hands of mother and uncle, sexual abuse he suffered by grandfather, and having been shuffled between foster homes until adulthood. 2007 WL 4555205 (11th Cir. Dec. 28, 2007); In ***U.S. v. Lopez***, 938 F.2d 1293, 1297-99 (D.C.Cir. 1991) the court remanded for district court to consider a departure from 51 month sentence imposed in drug case because defendant was exposed to domestic violence as a child, his mother's murder by stepfather, his need to leave town due to threats, and having grown up in slums of New York and Puerto Rico; In ***U.S. v. Ruiz***, 2009 WL 636543 (S.D. N.Y., March 11, 2009) the judge imposed a 96 month sentence rather than the guideline range of 140-175 months for crack offenses in part due to defendant's difficult childhood with abusive mother and largely absent father who was incarcerated and a heroin addict, and the absence of any prior

substance abuse assistance; In ***U.S. v. Handy***, 2008 WL 3049899 (E.D.N.Y. 2008) the court imposed a 30 month sentence rather than guideline range of 37-46 months for 20-year-old whose life story read like it came from "the feeder systems into the Cradle to Prison Pipeline": abandoned as an infant, separated from siblings, raised by aunt in high crime area, shot on the street at age 12, left school and took up crime at age 14, spent the majority of his adolescence in prison, prosecuted for possessing a gun he found and believed to be inoperable in an environment where finding a gun on the street is like finding cash; In ***U.S. v. Hunt***, 2007 WL 517494 (E.D. Va. Feb. 9, 2007) the court imposed a 24-month sentence because guideline range of 46-57 months for identity theft was greater than necessary given defendant's history and characteristics and considering other §3553(a) factors. Defendant was thirty years old and was victim of violence as a child and teenager. The court found that the seriousness of the offense paled in comparison to the seriousness of what happened to defendant. "Few persons have had a more difficult childhood than Defendant." She was also imprisoned for a prior crime before she was twenty years old for ten years whereas most youthful offenders receive suspended sentences.

Few persons have had a more difficult childhood than Alfred Allen.

**d. <u>Family and Marital History</u>**

*See Defendant's Version of the Offense, Part B, i.*

**e. <u>Education and Employment History</u>**

*See Defendant's Version of the Offense, Part B, ii.*

**f. <u>Substance Abuse</u>**

Defendant is currently addicted to pain killers and he would clearly benefit from drug treatment. *See also Defendant's Version of the Offense, Part B, v.*

**Conclusion**

Alfred Allen does not dispute the facts contained in the plea agreement. He intends to abide by the terms of said agreement. However, since Alfred entered his plea his physical and mental health have deteriorated. He fears that he will die in prison and there is mre than anecdotal evidence that the Bureau of Prisons is not equipped to adequately treat an individual with his multiple medical and mental issues. Every precaution should be taken to ensure that the

Bureau of Prisons can in fact provide adequate treatment before Alfred is incarcerated. To deny Alfred reasonable medical care would be a violation of the Eighth Amendment. Unless the Bureau of Prisons can adequately treat Alfred he is at risk of serious health problems or death.

Respectfully submitted,

s:/ Jerry D. Bischoff
Jerry Bischoff, Attorney for Defendant

Jerry Bischoff
Attorney at Law
35 E. Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 853-2167